**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**RICK N. obo
LINDA N., deceased[1],**

    **Plaintiff,**

**vs.**                           **CIVIL ACTION NO. 3:22-CV-00308**

**KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

    This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered July 29, 2022 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Motion for Judgment on the Pleadings along with his Brief in Support of Motion for Judgment on the Pleadings, and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 15, 14, 16)

    Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request

---

[1] For purposes herein, the deceased will be referred to as "Claimant".

for entry of an award for benefits or alternatively, remand (ECF No. 15); **GRANT** the Defendant's request to affirm the decision of the Commissioner (ECF No. 16); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

**Procedural History**

The Claimant protectively filed her applications for benefits on November 17, 2015, alleging disability since October 1, 2015 due to acute pancreatitis, arthritis in hands, depression, anxiety, high blood pressure, thyroid, neck pain, and leg cramps (Tr. at 212, 215, 241). Her claims were denied at the initial and reconsideration levels of review (Tr. at 59, 71, 85, 96). The Claimant passed away on January 5, 2018 (Tr. at 20, 234-235), subsequently, on January 9, 2018, the Plaintiff was substituted as a party (Tr. at 201).

An administrative hearing was held on January 29, 2018 before the Honorable Melinda Wells, Administrative Law Judge ("ALJ") (Tr. at 32-52). On April 17, 2018, the ALJ entered an unfavorable decision. (Tr. at 17-31) The Appeals Council denied the Plaintiff's request for review (Tr. at 1-8), however, on November 13, 2019, this Court vacated the ALJ's decision and remanded the case for further proceedings (Tr. at 771-772). Another hearing was held before the ALJ on October 5, 2020 (Tr. at 721-736), and on November 20, 2020, the ALJ entered an unfavorable decision (Tr. at 701-720). The ALJ's decision became a final decision when the Appeals Council denied the Plaintiff's request for review on June 6, 2022 (Tr. at 697-700).

On July 29, 2022, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 8, 9) Subsequently, the Plaintiff filed a Motion for Judgment on the Pleadings along with a Brief in Support of Motion for

Judgment on the Pleadings (ECF Nos. 15, 14), in response, the Defendant filed a Brief in Support of Defendant's Decision (ECF No. 16). Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

The Claimant was 56 years old as of the alleged onset date and 59 years old when she passed; she was considered a "person of advanced age" throughout the underlying proceedings. See 20 C.F.R. §§ 404.1563(e), 416.963(e). (Tr. at 45) She had a high school education, and previously worked as a deli manager, a cook, and a kitchen helper (Tr. at 242, 410, 417, 252-259).

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant filing for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims, 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d).

If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c). These Sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and

how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional

capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that the Claimant met the requirements for insured worker status through December 31, 2020. (Tr. at 706, Finding No. 1) Next, the ALJ determined that the Claimant had not engaged in substantial gainful activity since October 1, 2015, the alleged onset date. (Id., Finding No. 2)

At the second inquiry, the ALJ found that the Claimant had the following severe impairments: hypertension and major depressive disorder. (Id., Finding No. 3)

At the third inquiry, the ALJ concluded that the Claimant's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 707, Finding No. 4) The ALJ then found that the Claimant had the residual functional capacity ("RFC") to perform medium work except she:

> could occasionally climb and crawl, and frequently balance over uneven terrain, stoop, kneel, and crouch. She should have avoided more than occasional exposure to vibration, unprotected heights, and moving machinery. She required reasonable access to restroom facilities. She could have performed routine work that did not require more than occasional interaction with supervisors, coworkers, or the public.

(Tr. at 709, Finding No. 5)

At step four, the ALJ found that the Claimant was incapable of performing past relevant work. (Tr. at 712, Finding No. 6) In addition to her age, education, the immateriality of the transferability of job skills, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that the Claimant could have performed. (Tr. at 712-713, Finding Nos. 7-10) Finally, the ALJ determined that the Claimant had not been under a disability from October 1, 2015 through the date of her death. (Tr. at 713, Finding No. 11)

**Plaintiff's Challenges to the Commissioner's Decision**

In support of his appeal, the Plaintiff asserts that the ALJ failed to fully develop the medical evidence regarding the Claimant's impairments, specifically, her acute pancreatitis, osteoarthritis of multiple sites, thyroid problems, anxiety, depression, anxiety, neck pain and arthritis in her hands. (ECF No. 14 at 15-16) The Plaintiff also argues that the ALJ "completely ignored" the medical records and the opinions of the Claimant's treating providers and instead relied upon the opinions offered by non-treating, and partial record-reviewing state physicians (Id. at 16, 18). The Plaintiff further contends that the ALJ does not even mention the Claimant's depression or anxiety, and did not determine whether her mental impairments were severe or non-severe. (Id. at 16-17) The Plaintiff maintains that the combined effect of the Claimant's impairments warranted a finding of disability, but the ALJ failed to properly consider and evaluate the combined effects of her impairments, despite being supported by the opinions of longtime treating physicians. (Id. at 17-18) The Plaintiff argues the final decision is not supported by substantial evidence, and that this Court should find the Claimant was disabled, or alternatively, to remand so that her mental and

physical impairments can be fully developed allowing an accurate hypothetical question to be posed to the vocational expert concerning the Claimant's limitations. (Id. at 18)

In response, the Defendant points out that the Plaintiff simply copied the same arguments this Court previously found lacking, and includes the same deficiencies this Court identified before. (ECF No. 16 at 8) The Plaintiff provides no facts to support his argument that the ALJ failed to develop the record or that there was evidence the ALJ ignored, however, in this case, the ALJ did properly develop the record and considered all relevant evidence in her decision. (Id. at 9-10) The Plaintiff also fails to identify what opinions from her treating providers that the ALJ supposedly ignored, but only makes a broad reference to the entire record, an argument this Court also previously found fail to assert a specific challenge to the ALJ's decision. (Id. at 10-11) The Defendant further contends that the Plaintiff's allegation that the ALJ failed to consider or mention the Claimant's depression and anxiety is false, as the decision clearly shows that the ALJ did consider these impairments; again, the Defendant asserts that the Plaintiff merely copied the same argument he made when this case was before this Court in 2019. (Id. at 11-13) As for the Plaintiff's argument that the ALJ failed to consider the combination of impairments, this, too, is a verbatim copy of his previous argument that this Court rejected for being conclusory and without any citation to the record or any supporting facts. (Id. at 13-14) Finally, the Defendant states that the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 15)

**The Relevant Evidence of Record**[2]

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

West Virginia Department of Health and Human Resources Death Certificate:

On January 5, 2018 the Claimant passed away. Her death certificate indicated the immediate cause of death was myocardial infarction, as well as hypertension and obesity. (Tr. at 234) Other contributing conditions included hypothyroidism and depression (Id).

Treatment for Acute Pancreatitis - St. Mary's Medical Center:

On January 31, 2014, the Claimant was admitted to St. Mary's Medical Center with a diagnosis of acute pancreatitis, hypertension, hypothyroidism and obesity. (Tr. at 499) She complained of nausea and vomiting and abdominal pain for the past 2 days. (Id). On February 2, 2014, she was discharged with a diagnosis of acute pancreatitis (Tr. at 363).

Primary Care Provider Records:

On February 4, 2014, the Claimant presented to Ohio Valley Physicians as a new patient: She complained of pancreatitis, thyroid problems and needed a refill on her medications; diagnosis revealed hypertension and hyperlipidemia (Tr. at 464-467). During a follow up visit on February 27, 2014, the Claimant reported that she went to St. Mary's Medical Center for pancreatitis and thyroid problems and that she needed a refill on all meds (Tr. at 460). She complained of coughing non-stop for 2 days and had a working diagnosis of abdominal pain; tobacco use; benign essential hypertension; influenza; pancreatitis; acute pancreatitis; and hyperlipidemia (Id.).

On June 4, 2014 the Claimant complained that she forgets to eat and becomes hypoglycemic and feels shaky inside, wanting to sleep all day, blurred vison, sharp pains in her feet with leg cramps, and that she her symptoms for the last 4 weeks were getting progressively

worse (Tr. at 455). She was prescribed medication and told to follow up in two weeks (Tr. at 457).

On June 18, 2014, she reported pain in both legs she described as "bone aches and pain" (Tr. at 451). She said she worked on her feet for 30 years, primarily walking on concrete and that her pain was primarily in her hip, thigh, knee, and feet bilaterally (Id.). She was given a prescription for Vitamin D 50000 and diagnosed with osteoarthritis in multiple sites; she was also given a prescription for Meloxicam 15mg, Ultram 50mg (Tr. at 452).

On September 22, 2014, she again reported having pain bilaterally in her feet and hands. (Tr. at 448) Her diagnosis revealed hypertension, hyperlipidemia, vitamin D deficiency, osteoarthritis in multiple sites, sarcoidosis with lung involvement, persistent insomnia, generalized anxiety; pain in her feet and toes, and depressive disorder and prescribed medication (Tr. at 450).

On October 22, 2014, the Claimant had complaints of essential hypertension; generalized anxiety disorder; hyperlipidemia; pain in her feet and toes; osteoarthritis in multiple sites; persistent insomnia; restless leg syndrome; sarcoidosis with lung involvement; 2 sebaceous cysts; venous insufficiency; and vitamin D deficiency. (Tr. at 372) She was referred to a podiatrist (Tr. at 374). On October 31, 2014 she was seen for follow up on cyst removal (Tr. at 376) and was given a prescription for Tramadol hci 50mg for her feet and toe pain (Tr. at 378).

On November 20, 2014, due to the Claimant's ongoing complaints of bilateral leg pain with fatigue, heaviness associated with increased standing at work, varicosities, restless leg symptoms at night with difficulty maintaining sleep, numbness and tingling in lower extremities, a bilateral venous doppler scan was ordered (Tr. at 488).

On December 15, 2015, the Claimant returned to her primary care provided and reported that she was seen at St. Mary's Medical Center Emergency Room with complaints that her big toe

10

on left foot had been oozing and she had difficulty walking (Tr. at 441). She reported that she had lost her job and since then is feeling stressed (Id.). She was assessed with insomnia, neuropathy, hypertension, and irritable bowel syndrome and prescribed medications; she was also referred to podiatry for ingrown toenail (Tr. at 444).

On February 15, 2016 an ultrasound of the thyroid revealed a 5 mm nodule in the right thyroid lobe that correlated with hypothyroidism; a follow up ultrasound in 12 months was suggested (Tr. at 481).

On a March 16, 2016 follow up appointment, the Claimant reported "she is feeling fine" and her medications were continued (Tr. at 433-435).

On April 6, 2016, the Claimant presented as a new patient at the St. Mary's Women and Family Care Center with Clifton Bolinger, M.D. (Tr. at 534-538). It was noted that her hypothyroidism was clinically stable but her anxiety and hypertension were not controlled on the current medical regimen; new medication changes were made (Tr. at 538).

On May 6, 2016 the Claimant was seen for a one month follow up for anxiety and hypothyroidism: her mood symptoms were not controlled with current medications and she reported her daughter was using drugs and being super stressed out over this (Tr. at 541). She reported that the klonopin did not help much and she was continuing to have panic attacks and anxiety frequently (Id.). Her mood was dysphoric and very emotional, and the depression symptoms were not controlled by current medical regimen; her medications were adjusted and propranolol was added for panic and anxiety (Tr. at 544). Her hypertension was well controlled on medication and her hypothyroidism was clinically stable (Id.).

On May 27, 2016, at a two-week follow up, the Claimant complained of panic attacks, with

11

little change in anxiety levels; however, her hypothyroidism was stable, with no changes in mood, energy level, bowel function, or sleep (Tr. at 547). She was diagnosed with allergic rhinitis, benign hypertension, hemorrhoids, hypothyroidism, insomnia and anxiety disorder; testing concluded she suffered moderate symptoms of depression (Tr. at 550, 651).

On July 5, 2016, the Claimant was seen for a three-month follow up for hypertension, anxiety, allergic rhinitis and hypothyroidism, with complaints of bowel incontinence and no improvement in leg pains (Tr. at 554). Her hypothyroidism and hypertension were noted to be well controlled, however her depression symptoms were not controlled and her medication was adjusted (Tr. at 558); otherwise, mental status findings were generally unremarkable (Tr. at 557). A depression screening indicated she suffered from moderately severe depression (Tr. at 653). She was referred to a gastroenterologist for bowel incontinence (Tr. at 558).

On August 23, 2016, on follow up, the Claimant again reported that her mood related symptoms were not controlled with current medications, a depression screening indicated she had severe depression (Tr. at 665), otherwise, mental status findings were generally unremarkable, and her hypertension, hypothyroidism and insomnia were controlled with current medications (Tr. at 559, 562, 563). Another screening taken on October 11, 2016 indicated severe depression (Tr. at 670).

On December 20, 2016, the Claimant returned for a follow up visit, and continued to report that her depression symptoms were not currently controlled, otherwise, mental status findings were generally unremarkable (Tr. at 575). Another depression screening indicated severe depression (Tr. at 672).

Dr. Bolinger drafted a letter dated January 12, 2016 asking that the Claimant be excused

from jury duty due to her medical indications (Tr. at 577).

On February 2, 2017 the Claimant returned to Dr. Bolinger who noted her conditions were stable on medication, although her depression symptoms remained uncontrolled, otherwise, mental status findings were generally unremarkable (Tr. at 583-584). A depression screening indicated severe depression (Tr. at 673). On March 16, 2017, another depression screening indicated severe depression (Tr. at 675).

On April 21, 2017, she complained of blood sugars averaging between 167 to 216, with feelings of dizziness and that she "wants to 'jump out of her body' " (Tr. at 590). She was diagnosed with Type 2 diabetes mellitus, without complications and prescribed metformin HCl 1000mg and Abilify 5mg (Tr. at 593). It was noted her depression symptoms remained unstable (Id.), otherwise, mental status findings were generally unremarkable (Tr. at 598-599).

On May 26, 2017 the Claimant indicated that mood related symptoms were improved with current medication (Tr. at 596), although a depression screening indicated she continued to suffer from severe depression (Tr. at 679). By June 28, 2017, she reported that her symptoms of depression were not currently controlled (Tr. at 606); a depression screening indicated severe depression (Tr. at 681), otherwise, mental status findings were generally unremarkable (Tr. at 605). Her depression screening still indicated severe on August 14, 2017 (Tr. at 687).

On September 13, 2017 the Claimant complained of neuropathy and she elected to restart Lyrica and deal with the numbness, however, her anxiety and depression symptoms were noted to be well controlled on current regimen (Tr. at 616).

During her December 14, 2017 visit, she complained of muscle spasms in the legs (Tr. at 618) and that her depression symptoms were not currently controlled, otherwise, mental status

13

findings were generally unremarkable (Tr. at 621); a depression screening indicated severe depression (Tr. at 695). Her hypertension, hypothyroidism, allergic rhinitis, and insomnia were controlled, and that Lyrica was "helping" with her neuropathy (Tr. at 621-622).

<u>Consultative Psychological Examination:</u>

On January 19, 2016, the Claimant underwent a Mental Status Examination by Mary Chaney, M.A. on behalf of the Agency (Tr. at 408-413). The Claimant explained she was applying for benefits because after having hemorrhoid surgery she was no longer able to control her bowels and this has significantly impacted her life, as she does not go out at all (Tr. at 408). She also complained of a growth on her ear drum that affected her hearing in her right ear (<u>Id</u>.).

She reported symptoms of anxiety, getting tired easily, irritability and sleep disturbance; she stated her anxiety symptoms co-occurred with her depressive symptoms and that it was embarrassing to have to wear adult diapers (Tr. at 409). She also endorsed being abused both physically and psychologically by her father and older brother (<u>Id</u>.).

On her completed DDS Adult intake form she listed the following: "tired a lot, insomnia, waking early, depressed, not interested in much, memory problems, loss of consciousness, nervous, anxious, crying spells, many fears, nightmares, unemployed, financial troubles, cannot relax, often angry, let tension build up, physical health and family conflicts" (<u>Id</u>.). She reported that her hands were very painful due to her arthritis; that she experienced anxiety attacks and depression. She also reported that her physical abilities were affected by her medical conditions, including: squatting, standing, walking, stair climbing, and completing tasks (<u>Id</u>.). As for mental health treatment, she reported that she never received counseling (Tr. at 410).

She reported being able to do self-care tasks independently, did a little cleaning and

14

cooking, did drive, shopped for herself, and was able to handle finances (Id.). Hobbies involved

caring for her grandchildren (Id.). On a typical day, she would rise between 6:00 a.m. and 12:00

noon; she would watch television, think about things, call her mother, and go to bed around 8:00

p.m. (Id.).

On examination, it was noted the Claimant's grooming and hygiene were adequate; her

posture and gait within normal limits; she was cooperative during the evaluation; interacted with

the examiner in an appropriate fashion; her mood was depressed and her affect was restricted by

explanation of problems, with continued crying; she was fully oriented; her thought processes,

content, perception, insight and judgment were normal; she denied suicidal ideation; her

immediate memory, recent memory, and remote memory were within normal limits; her

concentration was mildly impaired; her social functioning, pace and persistence were within

normal limits (Tr. at 411). She was diagnosed with major depressive disorder, unspecified with

moderate anxious distress, and by the Claimant's report: high blood pressure, difficulty with bowel

control, arthritis, pancreatitis, a tumor on her ear drum and leg pain (Id.). Her prognosis was listed

as guarded due to her report of financial difficulties and medical conditions, but appeared capable

of managing her funds (Id.).

Consultative Medical Examination:

On January 27, 2016, the Claimant presented to Kip Beard, M.D., for an internal medicine

examination (Tr. at 415-419). The Claimant reported acute pancreatitis, arthritis in hands,

hypertension, thyroid problems, neck pain and leg cramps (Tr. at 415). Regarding her

hypertension, she complained her blood pressure caused her dizziness and strange feelings;

reported she was unable to hear or respond to people speaking to her; and that she gets very jittery

that lasted 15-20 minutes (Id.). Regarding the issue of acute pancreatitis, she reported being hospitalized for 3 days at St. Mary's Medical Center wherein she reported abdominal pain radiating through her back, with occasional nausea and vomiting (Id.). While she mentioned a history of hemorrhoids and surgery for that and complained of fecal incontinence since then, she does not use protection, though acknowledged she should (Id.).

Regarding her thyroid, she complained of intermittent dysphagia (Tr. at 416). Regarding her leg cramps, she related that her feet and toes cramp up and she suffers significant shooting pain in her feet, which sometimes radiates to her upper legs daily, and is made worse with walking or sitting, but improved with medication (Id.). She also complained of joint pain in both hips, knees and feet, with sharp pains graded 4 on a 10 scale, with stiffness late in day and swelling of feet and hands through the day (Id.). She reported low back pain, neck pain off and on for several years, flare ups of pain in her low back 3-4 times per week, with neck pain occurring " 'every once in a while' "; she described her pain level was sharp, up to 7 on a ten scale, with radiation into her legs (Id.). She also reported that her back and knees were weak and she had limitations of: sitting 20 minutes; standing 20-25 minutes; walking 2 blocks; lifting 30 pounds; " 'working' ", performing housework and yard work (Id.).

Dr. Beard observed that the Claimant presented with a normal gait, could step up and down from the examination table and rise from her seat without difficulty, and had a regular heart rate and rhythm (Tr. at 417). The Claimant also displayed full range of motion in all extremities, normal finger dexterity, normal strength, and normal sensation (Tr. at 418). She was able to heel walk, toe walk, tandem walk, and squat (Id.). Dr. Beard's impression was: dysphagia; fecal incontinence per history; history of acute pancreatitis in 2014; abdominal pain; leg cramps; hypertension; dizziness;

low back pain; cervicalgia; and osteoarthritis (Tr. at 419). In summary, Dr. Beard noted that the Claimant's description of abdominal pain did not "sound classic for that of the pancreas; however, her examination revealed some mild generalized tenderness and was non-revealing" (Id.). Regarding her thyroid issue, Dr. Beard found no significant thyromegaly; regarding her hypertension and leg cramps, the examination was unremarkable; regarding the joints, he noted there was evidence of osteoarthritis, and regarding the spinal pain, there was mild motion loss with discomfort, but no neurologic compromise (Id.).

Marshall Internal Medicine:

On August 31, 2016, due to complaints of diarrhea, the Claimant was seen by Akash Ajmera, M.D., gastroenterologist, who deemed she needed a colonoscopy (Tr. at 521). On September 30, 2016, she underwent a colonoscopy, resulting in a polyp being removed, otherwise the post-operative diagnosis was a normal colon (Tr. at 525-532).

Relevant Prior Administrative Medical Findings and Opinion Evidence:

On February 10, 2016, at the initial level of review, after having reviewed the medical evidence, the State agency medical consultant found that the Claimant could lift 50 pounds occasionally and 25 pounds frequently, and sit for 6 hours and stand/walk for 6 hours out of an 8-hour workday (Tr. at 66, 78-79). The Claimant was also found to be able to occasionally climb and crawl, frequently balance, stoop, kneel, and crouch, but she should avoid concentrated exposure to extreme cold, vibration, and hazards (Tr. at 67, 79). On April 26, 2016, at the reconsideration level of review, the State agency medical consultant found that the Claimant had no severe physical impairments or physical limitations (Tr. at 93, 104).

At both the initial and reconsideration levels of review, the State agency psychological consultants found the Claimant had no severe mental impairment or mental limitations (Tr. at 64-65, 76-77, 91, 102).

**The Administrative Hearing**

The Plaintiff's Testimony:

The Plaintiff is the Claimant's widower and testified that although he did most of the driving, when he was not around, she would drive herself from time to time (Tr. at 830-831). He stated that the Claimant always had pain in her legs from standing on the job, as well as arthritis in her hands that made them stiff; she also had breathing problems and irritable bowel syndrome that affected her job (Tr. at 832). She took medicine for the pain, which helped some, but it made her nauseous and drowsy (Tr. at 833). The Plaintiff did not believe the Claimant had injections for pain, but went to counseling for her depression (Tr. at 834). He recalled that the Claimant used hand braces or splits and a cane and that she used cold packs and heating pads for pain (Tr. at 834-835). The Plaintiff stated she had trouble using her hands, such as turning knobs or grasping or reaching (Tr. at 836).

The Plaintiff testified that the Claimant had medicine for depression that made her feel better, but she still was depressed (Tr. at 835).

He related that she had shortness of breath, but using an inhaler did not help her much so she did not pursue it (Tr. at 835-836).

The Plaintiff testified that the Claimant had trouble concentrating, that she took naps during the day, and did not do much housecleaning or shopping (Tr. at 837). The Plaintiff testified that the Claimant had problems controlling her bowels on a daily basis (Tr. at 838-839). He indicated

the Claimant lost interest in doing things she used to do, such as cooking, eating, or socializing (Tr. at 841-842).

The Vocational Expert's ("VE") Testimony:

After listening to Claimant's testimony, the VE determined that an individual with Claimant's work history, education and with the controlling RFC, *supra*, and while the individual could not perform the past relevant work, she could have performed the work of a store laborer, sorter, and furniture cleaner. (Tr. at 843-844) The VE also opined that the individual would be incapable of any work if the individual required two 30-minute breaks in addition to regularly scheduled breaks; or if the individual could not stand or walk more than two hours in an eight hour day, combined with not sitting more than three hours in an eight hour day with a break every hour of the three hours; or if the individual would be off task at least 15% or more of the day (Tr. at 844-845).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claims is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner

is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

## <u>Analysis</u>

As an initial matter, the undersigned observes, as suggested by the Defendant, that the Plaintiff has asserted the exact same arguments in this appeal as he did in his prior appeal before this Court, save for very few, albeit insignificant changes that do nothing to substantively further his arguments. See *Rick N. obo Linda N. v. Saul*, No. 3:19-CV-00173, 2019 WL 6003349 (S.D.W. Va. Oct. 22, 2019) (Eifert, M.J.), *report and recommendation adopted*, 2019 WL 6002121 (S.D.W. Va. Nov. 13, 2019) (Chambers, J.) (See ECF No. 15).

Regarding the Plaintiff's allegation that the ALJ failed to develop the record with respect to the Claimant's pancreatitis, osteoarthritis, thyroid problems, anxiety, depression, insomnia, neck pain, and hand arthritis, this Court previously addressed that issue, recognizing that the Plaintiff identified no inadequacies or gaps in the record that the ALJ should have developed. (Tr. at 762-763) This Court also previously noted that a Transcript of the Administrative Proceedings contained the records of the Claimant's clinical treatment, medical opinions, as well as the Claimant's applications for benefits, and other evidence. (<u>Id</u>.) Significantly, most of the official Transcript before the undersigned contains the exact same information that was before this Court in the prior appeal. Since the Plaintiff has advanced no new alleged error or specified how the ALJ

failed to develop the record in ***this*** appeal, the undersigned likewise **FINDS** that the record was sufficient for the ALJ to make an informed decision, and that there were no evidentiary gaps or deficiencies in the record the ALJ was obligated to develop. (<u>Id</u>.)

The other alleged error the Plaintiff has asserted here is the exact same he asserted in his prior appeal, which concerns the ALJ's failure to consider whether the combination of the Claimant's impairments met a listing – as before, the Plaintiff offers nothing but a conclusory statement that the combined impairments render the Claimant totally disabled – and, as before, without any documented support or specifics (Tr. at 763-765). As noted *supra*, the Plaintiff has the burden of proof at step three in the disability determination process, however, since he failed to identify how the ALJ erred in this regard, he has similarly failed to assert a specific challenge sufficient to trigger judicial review. Thus, regarding this particular alleged error, the Plaintiff has waived this argument. <u>Erline Co. S.A. v. Johnson</u>, 440 F.3d 647, 653 n.7 (4th Cir. 2006) (a "[c]onclusory remark is insufficient to raise on appeal any merits-based challenge"); <u>accord Sedghi v. PatchLink Corp.</u>, 440 Fed. App'x 165, 167 (4th Cir. 2011) ("By advancing only a conclusory argument, Sedghi has likely waived the issue."). Accordingly, the undersigned **FINDS** that the ALJ's step three decision is supported by substantial evidence.

 <u>The Medical Opinion Evidence:</u>

As noted *supra*, the Plaintiff argues that the ALJ failed in his duty to develop the record with respect to several alleged impairments[3], and that she not only "completely ignored the

---

[3] Again, as noted *supra*, the Plaintiff identified the following impairments: acute pancreatitis; osteoarthritis of multiple sites; thyroid problems; anxiety; depression; insomnia; neck pain; and arthritis in the hands. (ECF No. 14 at 15)

claimant's medical records from treating physicians", she also "summarily ignored" examining and treating provider opinions, including those provided by Jamie Stoner, APRN; Leigh Levine, D.O.; Kipp Beard, M.D.; Mary Chaney, M.A.; and Clifton Bolinger, M.D. (ECF No. 14 at 16).

With respect to the Plaintiff's contention that the ALJ "completely ignored" the medical records from the Claimant's treating providers, and "summarily ignored" the opinions provided by Ms. Stoner, Dr. Levine, Dr. Beard, Ms. Chaney, and Dr. Bolinger, the undersigned **FINDS** this argument lacks merit: first, the written decision is replete with references and specific citations to the Claimant's treating providers' records (Tr. at 707-712). Moreover, this Circuit has recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)); see also Call v. Berryhill, Civil Action No. 2:17-CV-02292, 2018 WL 4659342, *4 (S.D.W. Va. Sept. 28, 2018). In this case, the ALJ stated that she considered all the evidence of record. (See Tr. at 705, 710 ("After careful consideration of all the evidence. . ."); Tr. at 706, 709 ("After careful consideration of the entire record. . ."). Having so stated, this court should "take [him] at [his] word." Reid, 769 F.3d at 865 ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word."); see also Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."); Christina W. v. Saul, No. 4:19-cv-00028-PK, 2019 WL 6344269, *4 (D. Utah Nov. 27, 2019)("Plaintiff further argues that the ALJ erred in not explicitly discussing various pieces of evidence, particularly the fact that she is participating in a structured treatment program. While the

ALJ must consider all the evidence, she need not recite each piece of evidence she has considered. The ALJ stated that she carefully considered the entire record and the Court can take her at her word.").

As for the "opinions" provided by the aforementioned medical sources, the undersigned observes that the Plaintiff merely refers to several exhibits purportedly containing the "opinions" of these providers: Exhibits 3F, 4F, 5F, 6F, 9F, 10F, and 11F.[4] (ECF No. 14 at 16) A review of the record shows that Exhibits 9F and 11F concern medical records from the Claimant's primary care providers at Ohio Valley Physicians and St. Mary's Women's & Family Care Center, respectively (Tr. at 428-516, 534-695), however, **NONE** of these treatment records contain a medical opinion as defined under the Regulations, *infra*. Exhibit 10F concerns treatment records from Dr. Ajmera, who performed the Claimant's unremarkable colonoscopy (Tr. at 517-532), these records also contain **NO** opinion evidence. Exhibits 5F and 6F concern the consultative examinations performed by Ms. Chaney and Dr. Beard, respectively, neither of whom provided medical opinions as defined under the Regulations (Tr. at 408-413, 414-420). Finally, and most puzzling, are Exhibits 3F and 4F (Tr. at 400, 401-407), which are not medical records **AT ALL**, but fax cover sheets requesting medical records, which indicate none were found. Regardless, even a cursory review of the ALJ's written decision shows that she did consider all this evidence, because those records are referenced and cited throughout her decision (Tr. at 707-712).

---

[4] Notably, this Court also previously recognized in the Plaintiff's prior appeal that "[t]he broad reference to nearly the entire medical record does not assert any specific challenge to the ALJ's consideration of the evidence." (Tr. at 761) See also, Williams v. Saul, No. 3:18-cv-01282, 2019 WL 3756392, at *13 (S.D.W. Va. July 17, 2019), *report and recommendation adopted*, 2019 WL 3759805 (S.D.W. Va. Aug. 7, 2019) ("Claimant does not identify any error in the ALJ's consideration of the medical opinions, and her generalization that the ALJ failed to consider the opinions, without any reference to any specific error by the ALJ, fails to carry any weight.").

A "medical opinion" is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. See 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The Regulations also define "findings . . . about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review" as "prior administrative medical finding[s]." Id. at §§ 404.1513(a)(5), 416.913(a)(5). Indeed, the only opinion evidence of record is from the State agency medical and psychological consultants, which the ALJ explicitly addressed in her written decision. (Tr. at 711-712, 59-70, 71-82, 85-95, 96-106)

Finally, as to the Plaintiff's argument that the ALJ "does not even mention or make reference to the claimant's mental impairments of depression or anxiety, let alone make a determination as to whether the mental impairments suffered were non-severe or severe[]" (ECF No. 14 at 16), the Plaintiff is patently wrong: the ALJ explicitly discussed the Claimant's mental impairments – she even found major depressive disorder to be a severe impairment at step two, *supra*. The ALJ noted from the onset that this Court remanded the Claimant's case so that she may assess her mental impairments (Tr. at 704). Following her finding that the Claimant's major depressive disorder was a severe impairment, the ALJ proceeded to evaluate the Claimant's mental impairment pursuant to the Regulations' "special technique" by rating the degree of functional limitation resulting from the impairment as supported by the evidence of record:

In the area of understanding, remembering or applying information, the ALJ determined the Claimant was mildly limited, noting that the Claimant's physician reported no mental status

abnormality, and the psychological consultative examination yielded normal results. (Tr. at 708, 428-517, 534-696, 411)

In the area of interacting with others, the ALJ determined the Claimant was moderately limited, noting she reported avoiding going out to eat with friends or other places due to fear of having bowel incontinence; that during the psychological consultative examination, interaction was observed to be normal; and that the Claimant's physician did not report any mental status abnormality. (Tr. at 708, 265, 289, 408-413, 428-517, 534-696)

In the area of concentrating, persisting, or maintaining pace, the ALJ determined the Claimant was mildly limited, again noting that the psychological consultative examiner found her concentration only mildly impaired, and also because the Claimant's physician did not report any mental status abnormality. (Tr. at 708, 408-413, 428-517, 534-696)

Finally, as for adapting or managing oneself, the ALJ determined the Claimant had moderate limitations, again noting that treating physicians did not report abnormal mental status; that she reported being able to maintain personal hygiene; that she cried at the beginning of the psychological consultative examination because her grandfather had a stroke that day, but was calmer at the end, and although she did not receive mental health treatment, her primary physician treated her for depression and anxiety. (Tr. at 708, 261, 285, 408-413, 534-696)

When assessing the Claimant's RFC, the ALJ discussed the Plaintiff's testimony from both administrative hearings, from the first appeal and the one at bar, expressly acknowledging the Plaintiff's statements about the Claimant's mental issues: that the Claimant had concentration problems, impaired memory, anxiety problems, was socially withdrawn, and cried a lot (Tr. at

710).[5] The ALJ also recognized that the Claimant had been diagnosed with depression as early as 2005 and had been treated with medication. (Tr. at 711, 371-399, 534-696, 948-985) In addition to mentioning the examiner's observations from the psychological examination, the ALJ acknowledged the December 2017 depression screening showed she had severe depression. (Tr. at 711, 695) The ALJ compared this evidence against the overall record before her, noting in particular, that these statements about the intensity, persistence, and limiting effect of the Claimant's symptoms were not consistent: she received only conservative treatment; her blood pressure was relatively stable during the relevant period; she received treatment for her mental impairments but was not referred for mental health treatment "which indicates her symptoms were adequately controlled with medication"; while the Plaintiff testified the Claimant had frequent panic attacks, the Claimant did not report attacks with such frequency to her treating physicians; while the Plaintiff testified the Claimant had difficulty with concentration and memory, medical records showed she had no such deficits in memory, and the psychological examination indicated only mild impairment in concentration. (Tr. at 711)

The ALJ then discussed the opinion evidence of record, noting that the State agency consultants determined the Claimant had non-severe affective disorders, with only mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace, and no repeated episodes of decompensation (Tr. at 712, 59-70, 71-82, 85-95,

---

[5] The ALJ also acknowledged the Plaintiff's testimony as it related to the Claimant's physical impairments, however, as this Court found in the prior appeal, substantial evidence supported the ALJ's findings and conclusions with respect to the physical impairments, and having noted that the record regarding same did not substantially or substantively change in this appeal, the undersigned finds no reason to revisit that issue. In any event, because the Plaintiff merely advances generalized, conclusory, and even erroneous arguments regarding the ALJ's decision, the undersigned deems such arguments waived for purposes herein, *supra*.

96-106). The ALJ compared this evidence with the psychological consultative examiner's findings, who diagnosed the Claimant with major depressive disorder, unspecified with anxious distress moderate, and also with the Claimant's treating providers' records, which showed she reported a depressed or dysthymic mood, emotional lability, restricted affect, and mildly impaired concentration (Tr. at 712, 408-413, 544, 558, 695). Ultimately, the ALJ gave only little weight to the only opinion evidence of record regarding the Claimant's alleged mental impairments because they were inconsistent with and not supported by the medical evidence of record. (Tr. at 712)

In short, the ALJ clearly complied with this Court's prior Order remanding this case for further consideration of the evidence regarding the Claimant's mental impairments. (Tr. at 767-770, 771-772) Accordingly, the undersigned **FINDS** the ALJ's findings and conclusions as they relate to the Claimant's mental impairments is supported by substantial evidence.

Finally, the undersigned **FINDS** that the Defendant's final decision determining that the Claimant was not disabled from October 1, 2015 through the date of her death is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (ECF No. 15), **GRANT** the Defendant's request to affirm the decision below (ECF No. 16), **AFFIRM** the final decision of the Defendant, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District

Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: January 4, 2023.



Omar J. Aboulhosn
United States Magistrate Judge